MOTORISTS MUT. INS. CO. *v.* BITTLER.

(No. 786792—Decided February 20, 1968.)

Common Pleas Court of Cuyahoga County.

Messrs. *Weston, Hurd, Fallon, Sullivan & Paisley* and Mr. *Thomas P. Curran,* for plaintiff.

Messrs. *Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson* and Mr. *Leon M. Plevin,* for defendant.

McMONAGLE, J.   On May 3, 1961, the plaintiff insurance company issued its automobile policy to Ralph A. Bittler, a defendant herein.   The policy included a standard type endorsement for protection against uninsured motorists.   The automobile described in the policy was a 1957 Ford convertible.   The names of the insured were Ralph A. Bittler and Phyllis Bittler, husband and wife.

The action was submitted for a decision of the court on the amended petition of the plaintiff, the answer of the defendant, Mr. Bittler, the evidence (which by stipulation consists of the insurance policy, the Uninsured Motorists Endorsement and the deposition of Mr. Bittler), the brief and arguments of counsel.

On November 20, 1961, Ralph Bittler was injured while operating a 1961 Plymouth automobile which was owned by the Dornback Furnace & Foundry Company, his employer, when it was struck by an uninsured automobile operated by one James Stokes. Travelers Insurance Company had issued its automobile policy on the said Plymouth automobile. That policy did not contain an uninsured motorist's endorsement.

When the plaintiff refused to make payment for the injuries sustained by Mr. Bittler, he did, on May 13, 1963, transmit to the American Arbitration Association, defendant herein, a demand for arbitration under the provisions of said insurance policy. He claimed that the sum of $10,000 was due him from the plaintiff as a result of his sustaining the injuries of November 20, 1961, and asked that the controversy be arbitrated in accordance with Item I of the Uninsured Motorists' Endorsement of his policy. Upon the filing of the demand for arbitration, the within action was filed with Motorists Mutual Insurance Company as plaintiff and Ralph A. Bittler and the American Arbitration Association as defendants. The action is one for injunction, declaratory judgment and relief. Both the plaintiff and the defendant, Ralph A. Bittler, ask this court to determine and declare whether or not the Uninsured Motorists' Endorsement of the automobile coverage policy issued to Ralph A. Bittler covered the injuries sustained by him in the automobile collision of November 20, 1961.

The plaintiff contends:

"1) that the uninsured motorists' protection only applied where injuries are sustained while an insured is operating or occupying an automobile, if such vehicle is an 'automobile to which the Bodily Injury Liability coverage of the policy applies.' Item II(b) of the Endorsement.

"2) That the Bodily Injury Liability coverage of the

policy does not apply 'to any automobile * * * furnished for regular use to * * * the named insured.'

"3) that the Plymouth automobile was 'furnished for regular use to the named insured'; that therefore the Bodily Injury Liability coverage of the policy does not apply and therefore the uninsured motorist's coverage also does not apply.''

The insured, Mr. Bittler, contends:

"1) that the uninsured motorists' endorsement covers the insured in any 'automobile while being operated by the named insured.' He points out Section II(b) (3) of the endorsement.

or

"2) if the contention by the plaintiff that the endorsement does not apply when the insured is occupying a non-owned automobile furnished for (his) regular use, is valid, that the uninsured motorists protection is nonetheless available to him because in the instant case the vehicle he was operating was not an 'automobile furnished for regular use' to him.

The following are the provisions of the Uninsured Motorists' Endorsement and of the policy proper which are relied upon by either the insurer or the insured or both:

"ENDORSEMENT

"Protection Against Uninsured Motorists

"(Automobile Bodily Injury Liability)

"In consideration of the payment of the premium for this endorsement, the company agrees with the named insured, subject to the limits of liability, exclusions, conditions and other terms of this endorsement and to the applicable terms of the policy:

"INSURING AGREEMENTS

"I. Damages for Bodily Injury Caused by Uninsured Automobiles.

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured caused by accident while this endorse-

ment is in effect and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company, or if they fail to agree by arbitration.

"II Definitions

"(a) Insured. The unqualified word 'insured' means

"(1) the named insured as stated in the policy and any person designated as named insured in the schedule and, while residents of the same household, the spouse of any such named insured and relatives of either; provided, if the named insured as stated in the policy is other than an individual or husband and wife who are residents of the same household, the named insured for the purposes of this endorsement shall be only a person so designated in the schedule;

"(2) any other person while occupying an insured automobile, and

"(3) any person, with respect to damages he is entitled to recover for care or loss of services because of bodily injury to which this endorsement applies.

"The insurance applies separately with respect to each named insured under this endorsement and residents of the same household, but neither this provision nor application of the insurance to more than one insured shall operate to increase the limits of the company's liability.

"(b) Insured Automobile. The term 'insured automobile' means an automobile to which the Bodily Injury Liability coverage of the policy applies, provided such automobile is:

"(1) an automobile which is owned by the insured named in the declarations of the policy, or by his spouse if a resident of the same household;

"(2) an automobile while temporarily used as a substitute for an insured automobile as described in subparagraph (1) above, when withdrawn from normal use be-

cause of its breakdown, repair, servicing, loss or destruction; or

"(3) an automobile while being operated by the named insured, or by his spouse if a resident of the same household."

"The term 'insured automobile' shall not include:

"(i) an automobile while used as a public or livery conveyance;

"(ii) under subparagraphs (1) and (2) above an automobile unless being used by or with the permission of the named insured or such spouse; or

"(iii) under subparagraphs (2) and (3) above, an automobile owned by the named insured or by any resident of the same household."

"POLICY PROPER

"INSURING AGREEMENTS

"I. COVERAGES A and B—Bodily Injury and Property Damage Liability.

"to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of the automobile, including the loading or unloading thereof and resulting in:

"(A) Bodily injury, sickness or disease including death at any time resulting therefrom sustained by any person;

"(B) Damage to or destruction of property, including its loss of use."

"V. USE OF OTHER AUTOMOBILES

"If the first named insured is an individual, such insurance as is afforded by this policy with respect to said automobile applies to any other automobile, subject to the following provisions:

"(a) Under coverages A and B, the unqualified word 'insured' includes (1) such first named insured, and spouse if a resident of the same household, and (2) any other person or organization legally responsible for the use by such first named insured or spouse of an automobile not owned or hired by such other person or organization. Insuring Agreement III does not apply to this insurance.

"(b) (Not applicable.)

"(c) This insuring agreement does not apply:

"(1) to any automobile owned by or furnished for regular use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse;

"(2) to any occurrence arising out of the operation of an automobile repair shop, storage garage, sales agency, service station or public parking place;

"(3) under coverages A and B to any automobile while used in the business or occupation of the named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, private chauffeur or domestic servant."

Provision V(c) (1) is included in the policy so that the parties understand there is only one automobile of the insured to which the policy proper applies. If the insured owns two cars he must have specific coverage for each car. Payment of the insurance premium for one automobile will not provide protection from liability of the insured for claims arising out of the use or operation of any other automobiles owned by him nor for comprehensive or collision losses to a car. The provision specifically excludes like automobile insurance to the insured while operating a non-owned automobile (for which, of course, he has not paid a specific insurance premium) if the automobile is being "furnished for (his) regular use." Probably he could procure insurance, providing such protection while he is in the use of a car furnished for his regular use, upon paying a premium therefor.

Said Item V(c) (1) has no application to a situation where the insured is operating a non-owned automobile with the permission of the owner for an occasional or infrequent use as distinguished from its operation when "furnished for regular use." This provision does not apply to an insured's newly acquired automobile, or temporarily substituted automobile, etc. When an automobile policy covering a specific automobile is in force it provides specified insurance protection for any person driving that automobile by or with the permission of the named insured.

The Plymouth being operated by Mr. Bittler on November 20, 1961, was insured with Travelers Insurance Company and he was entitled to the coverage specified in that policy.

There is no contention that Mr. Bittler would not be entitled to the protection provided by the Uninsured Motorists' Endorsement in the policy issued by the plaintiff, if the Plymouth was an automobile used by him occasionally or infrequently. Bodily Injury Liability coverage is not provided Mr. Bittler in plaintiff's policy when he is operating an automobile "furnished for (his) regular use." If it be determined that on November 20, 1961, he was operating a car "furnished for (his) regular use," the court must then decide whether the Uninsured Motorists' Endorsement includes coverage under circumstances not included in Bodily Injury Liability coverage. Specifically in this case— whether the uninsured motorists coverage applies notwithstanding the fact a named insured is operating an automobile furnished for (his) regular use.

The policy itself does not define when an "automobile (is) furnished for regular use to the named insured." The phrase would not appear to be the subject of strict legal definition but is ordinarily a fact to be determined from the evidence. In this respect the test is whether a permissive use of a non-owned automobile is or is not for occasional or infrequent driving. Coverage is provided a permissive driver (*i. e.*, an insured) for the occasional or infrequent driving of a non-owned automobile. See, *Rider* v. *Lynch*, 201 A. 2d 561, 42 N. J. 465, and *Lalos* v. *Tickler*, 170 A. 2d 843.

The ultimate determinaton arrived at herein by the court possibly would not require a finding with reference to whether the Plymouth was or was not an automobile furnished for regular use by Mr. Bittler. However, the court feels it advisable that a finding be made on all the issues.

The court finds from the evidence that the Plymouth automobile being operated by Mr. Bittler on November 20, 1961, was an automobile furnished for his regular use, but by virtue of the ultimate decision herein such fact is not material.

We shall therefore take up a consideration of the

contention by the plaintiff which is in substance that the uninsured motorists protection only applies where injuries are sustained while an insured is operating or occupying an automobile, if such vehicle is one to which the Bodily Injury Liability coverage of the policy applies and the contention of the insured that such endorsement covers the named insured while in any automobile being operated or occupied by him. Mr. Bittler contends that if it be determined that the endorsement does not specifically provide that he is entitled to the coverage as claimed by him that the endorsement and the policy provisions are ambiguous; that a reasonable interpretation of them giving the benefit of such interpretation to the policyholder—since the instruments were written by the plaintiff—require a finding that he is entitled to this coverage.

Able counsel for both sides have provided the court with excellent briefs discussing the questions presented herein. Both concede that there are no reported decisions upon the question being now considered and that the question is one of first impression.

Plaintiff refers the court to the fact that the endorsement states the uninsured coverage, "* * * is subject * * * to the applicable terms of the policy," and cites the case of *Nationwide Mutual Insurance Company* v. *Akers,* 340 F. 2d 150, in support of its contention herein.

The court concurs in the plaintiff's contention that the subject Uninsured Motorists Endorsement, standing alone, does not constitute the entire contract for such coverage. It does not even specify the named insured nor the insured automobile. The court has considered both "the applicable terms of the policy" and the endorsement in arriving at its decision.

The court does not, however, concur in the plaintiff's contention, nor a somewhat similar contention by Mr. Bittler, that a decision in the matter being now considered requires a finding that the uninsured motorists protection is only applicable if an "insured automobile" was involved in the episode giving rise to the claim. Actually an accidental involvement of an uninsured automobile with an insured are the material ingredients for such a claim.

The insurance industry has endeavored to provide

complete insurance protection for the motorists of the nation so that when a motorist pays the amount of the agreed premiums he can feel relieved of all substantial financial obligations which might result from injury either caused by, or to him, from the operation of automobiles.

Uninsured motorists endorsements have only been written within fairly recent years. They were written so that indemnification could be received for damages resulting from injuries sustained by an insured and arising out of ownership, maintenance or use of an uninsured automobile by another.

Section 3937.18, Revised Code, effective February 21, 1967, makes it mandatory that uninsured motorists coverage be included with each motor vehicle liability policy unless such coverage is rejected by the policyholder.

Such an endorsement does not provide any indemnification for damages to an automobile. It covers injury only to the person. It can only be purchased in conjunction with or as supplemental to an automobile policy.

It is not necessary for an injured insured to be occupying any automobile to be entitled to the protection of this endorsement. If he is injured, by accident while a pedestrian as the result of the operation of an uninsured automobile, he is covered.

Assumedly, if, on November 20, 1961, while Mr. Bittler was operating the Plymouth, it sustained some property damage as a result of being struck by an uninsured automobile, and thereafter while Mr. Bittler was standing on the pavement surveying the car damage, the uninsured automobile was propelled against him and injured him there would be no question about the plaintiff's responsibility to indemnify Mr. Bittler for such injuries. It is inconceivable, under the provisions of the endorsement, that the plaintiff should not be likewise liable if Mr. Bittler was injured while he was occupying the Plymouth.

The briefs of both counsel extensively discuss the term "insured automobile" as used in the endorsement and their impressions about the necessity for occupancy of an "insured automobile" for a person to be entitled to the coverage provided by the endorsement.

The definition of an "insured automobile" (Item II

(b) of the endorsement is chiefly of importance when an uninsured motorist's claim is made by "any other person while occupying an insured automobile," who is within the definition of "insured" (Item II(a) (2)). This includes a person whom the named insured has permitted to operate an automobile temporarily used as a substitute for an insured automobile, when the automobile specifically designated in the policy was withdrawn from normal use because of breakdown, repair, servicing, loss or destruction. It also includes a guest in such substitute automobile while it is being operated by a named insured. It is only by virtue of Item II(a) (2) and Item II(b) (2) and (3) that such coverage is provided. This represents special coverage under particular circumstances. The named insured is a bailee of the automobile being operated at such times.

The liability of the plaintff under the facts in this case is clearly set forth in unambiguous language in Item I of the endorsement which provides:

"In consideration of the payment of the premium for this endorsement, the company agrees * * *

"I. To pay all sums which the insured * * * shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury * * * sustained by the insured, caused by accident * * * and arising out of the ownership, maintenance or use of such uninsured automobile; * * *"

There is no dispute that the automobile operated by Mr. Stokes which was involved in the collision of November 20, 1961, was an uninsured automobile. This provision does not exclude uninsured motorists coverage while the named insured was operating a non-owned automobile furnished for his regular use, nor does it exclude such coverage unless he was operating or occupying an "insured automobile." The provision definitely provides such coverage at all times and under all circumstances when a named insured sustains injury caused by accident as a result of the operation of an uninsured automobile.

Thus, the uninsured motorists coverage was applicable if, at the time of sustaining injury, Mr. Bittler, a named

insured, was occupying the Ford described in his policy, or was on foot, or on horseback, or while stiting in his rocking chair on his front porch or while occupying a nonowned automobile furnished for his regular use, including the Plymouth occupied by him on November 20, 1961. This so-called uninsured protection is limited personal accident insurance chiefly for the benefit of the named insured.

The question as to whether Mr. Bittler is entitled to recover damages as a result of such collision and if so, the amount thereof, is not for decision by this court. The contract provides for arbitration in those respects.

The court appreciates that under the decision herein the uninsured motorists coverage would cover a named insured while he is operating or occupying another otherwise uninsured automobile owned by him. Item I of the endorsement so provides.

Since the uninsured motorists protection chiefly constitutes indemnification in the nature of personal accident insurance for the named insured, there is, in the absence of any special provision or exclusion, no need for his procuring and paying for two such contracts for one injury. This special indemnification contract becomes effective because a third person, not the named insured, operates an automobile without bodily injury liability coverage.

Counsel for Mr. Bittler shall prepare a Journal Entry in which the court:

(a) determines and declares that the plaintiff Motorists Mutual Insurance Company is obligated to pay all sums which Ralph A. Bittler shall be entitled to recover as damages from James Stokes, because of bodily injury sustained by Ralph A. Bittler, the defendant, caused by accident on November 20, 1961; provided, the determinaton as to whether Mr. Bittler is entitled to recover such damages and if so, the amount thereof, shall be made by agreement between the plaintiff and Mr. Bittler, or if they fail to agree, by arbitration by The American Arbitration Association, defendant;

(b) directs the defendant, The American Arbitration Association to proceed with the arbitration proceedings

34

heretofore demanded by defendant, Mr. Bittler, unless the claim is settled by agreement between the plaintiff and Mr. Bittler.

(c) dismisses the prayer of the pettion for injunctive relief;

(d) enters judgment for the costs hereof against the plaintiff.