[No. 42726-1-I.   Division One.   September 20, 1999.]

MEAGHAN PARKER, *Respondent*, v. UNITED SERVICES AUTOMOBILE ASSOCIATES, *Appellant*.

*Maureen Mullane Falecki* of *Burgess, Fitzer, Leighton & Phillips, P.S.*, for appellant.

*Kevin D. Swan* and *James A. Smith, Jr.*, of *Smith & Leary, P.L.L.C.*, for respondent.

BAKER, J. — Meaghan Parker was injured when her father's recreational vehicle was struck by an underinsured driver. Parker recovered the underinsured driver's policy limits and the underinsured motorist (UIM) limits under her father's United Services Automobile Associates (USAA) policy. She then sought UIM coverage under her mother's USAA policy (her parents were divorced and had identical USAA policies). USAA denied coverage on Parker's mother's policy. Parker sued, and the trial court granted summary judgment in her favor, ruling that coverage existed.

External stacking of UIM insurance occurs where multiple policies are layered upon each other, giving the insured UIM coverage beyond his or her UIM single policy limits. RCW 48.22.030(6), the UIM "antistacking" statute, provides:

> The policy may provide that if an injured person has other

similar insurance available to him under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.

■■ Generally, antistacking clauses do not violate public policy.[1] The public policy underlying UIM insurance is to provide a second, floating layer of coverage to protect persons who are injured by underinsured motorists.[2] Although prior cases described that the policy of UIM coverage was to make the injured person whole, the policy is now described as providing the insured with a full UIM recovery.[3]

To be enforceable, an antistacking provision must be unambiguous.[4] Ambiguity can arise from the application of the antistacking clause to the particular facts.[5]

The UIM antistacking provision in the USAA policy provided:

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

The trial court granted Parker partial summary judgment, holding that the language was ambiguous and must be construed in favor of the insured to allow stacking.

---

[1]*Greengo v. Public Employees Mut. Ins. Co.*, 135 Wn.2d 799, 811, 959 P.2d 657 (1998).

[2]*Id.* at 810.

[3]*Id.*

[4]*State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 590, 871 P.2d 1066 (1994) (citing *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 844, 734 P.2d 17 (1987)).

[5]*Hawn v. State Farm Mut. Auto. Ins. Co.*, 768 F. Supp. 293, 296 (E.D. Wash. 1991).

■ The standard of review in this context is de novo.[6] We review the facts in the light most favorable to the non-moving party.[7]

The issue presented is whether Parker, the daughter of two divorced, separately insured USAA policyholders, is entitled to recover full UIM benefits under both policies despite the antistacking clause contained within her mother's policy.

Relying on *Greengo v. Public Employees Mutual Insurance Co.*,[8] USAA argues that the policy is unambiguous. USAA cites numerous cases for the proposition that the court cannot create ambiguity where none exists and must therefore enforce the contract as written.[9] USAA argues that it is clear from the policy's antistacking clause that stacking of *any* policy is prohibited by the contract.

Parker argues that the use of "we" and "our share" in the UIM antistacking provision creates ambiguity because the phraseology may be understood to differentiate between any and all insurance policies issued by USAA, as distinguished from policies issued by other carriers. For support, Parker relies on *Hawn v. State Farm Mutual Automobile Insurance Co.*,[10] and *State Farm Mutual Automobile Insurance Co. v. Johnson*,[11] (which utilized the *Hawn* analysis). These cases held that the "other insurance" provisions were ambiguous because they were susceptible to two interpretations. The antistacking provision at issue in each of those cases was much more complicated than that in the present case. Each had interdependent clauses and distinguished between coverage issued "by us to you" and

---

[6]*Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 782, 958 P.2d 990 (1998).

[7]*Johnson*, 72 Wn. App. at 584-85.

[8]135 Wn.2d 799, 959 P.2d 657 (1998).

[9]*See Daley*, 135 Wn.2d at 783-84; *Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 515, 940 P.2d 252 (1997); *Smith v. Continental Cas. Co.*, 128 Wn.2d 73, 78-79, 82, 904 P.2d 749 (1995).

[10]768 F. Supp. 293 (E.D. Wash. 1991).

[11]72 Wn. App. 580, 593, 871 P.2d 1066 (1994).

"coverage from other sources" in the liability section of the policy.[12]

---

[12]*Hawn*, 768 F. Supp. at 294-95, antistacking provision provided:

3. Coverage U—Underinsured Motor Vehicle—Bodily Injury

b. Limits of Liability

5. The limits of liability are not increased because:

a. an insured has coverage for more than one vehicle under this or any other policy; or

b. more than one person is insured at the time of the accident; or

c. more than one underinsured motor vehicle is involved in the same accident.

d. If There Is Other Coverage

The limit of liability under this policy is the maximum limits of liability for all damages resulting from any one accident regardless of the number of covered persons, claims made, or vehicles or premiums shown on the declarations page, or premiums paid, or vehicles involved in an accident.

Subject to the above:

1. If the insured sustains bodily injury as a pedestrian and other underinsured motor vehicle coverage applies:

a. the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

b. we are liable only for our share. Our share is that percent of the damages that the limit of liability of this coverage bears to the total of all underinsured motor vehicle coverage applicable to the accident.

The *Johnson*, antistacking "other insurance" provision provided:

**If There Is Other Coverage**

3. If the **insured** sustains **bodily injury** while **occupying** a vehicle not owned by **you, your spouse** or any **relative**:

a. and other underinsured motor vehicle coverage from a policy issued by us to you applies, the total limit of liability available from all such coverages shall not exceed that of the coverage with the highest limit of liability.

b. Subject to a. above, if any other underinsured motor vehicle coverage is available, this coverage is:

1. excess to any underinsured motor vehicle coverage that applies to the vehicle as primary coverage, but

2. only in the amount by which this coverage exceeds the primary coverage.

If other coverage also applies as excess:

The analysis in *Johnson*[13] was heavily tied to the complicated clause structure. In the *Johnson* policy, paragraph 3(a) clearly applied to policies issued exclusively by State Farm. The reference to "any other underinsured motor vehicle coverage" in paragraph 3(b) thus suggested that the antistacking provision in paragraph 3(b) applied only to policies issued by companies other than State Farm. In addition, the policy clearly distinguished throughout between coverages issued by State Farm and coverages from other sources.

Because USAA's antistacking provision has less of the "issued by us" versus "other source" language than those in *Hawn* or *Johnson*, we are left to decide whether the antistacking provision of this policy is itself ambiguous. We conclude that it is not ambiguous. USAA's antistacking provision does not contain the misleading "issued by us" and "other source" language, and the average purchaser of insurance would understand the antistacking provision to apply to any other policy providing similar insurance, including policies issued by USAA. The provision differentiates between this insurance policy and any other policy and limits recovery to the higher applicable limit under any one policy.

Finally, we note that similar language was found not to be ambiguous in *Greengo*:

> If this policy and any other policy providing **underinsured motorist** coverage apply to the same loss, the maximum limit

---

1. the total limit of liability shall not exceed the difference between the limit of liability of the coverage that applies as primary and the highest limit of liability of any one of the coverages that apply as excess; and

2. we are liable only for our share. Our share is that per cent of the damages that the limit of liability of this coverage bears to the total of all underinsured motor vehicle coverage applicable as excess.

*Johnson*, 72 Wn. App. at 589-90.

[13] 72 Wn. App. at 590.

of liability under all policies will be the highest limit of liability that applies under any one policy.[14]

The difference between the policy at issue here and the policy in *Greengo* is insignificant.

Reversed.

AGID, A.C.J., and COLEMAN, J., concur.

Review denied at 140 Wn.2d 1010 (2000).